**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |  |
|---|---|---|
| | * | |
| **ANTHONY MEYER,** | | |
| | * | |
| **Plaintiff,** | | **Case No.: GJH-19-3412** |
| | * | |
| **v.** | | |
| | * | |
| **DYNCORP INTERNATIONAL, LLC** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION**

Plaintiff Anthony Meyer brings this action against DynCorp International, LLC ("DynCorp" or "Defendant") alleging three violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., as amended ("ADA"). Specifically, he alleges he was terminated on the basis of his disability ("Count I"), denied a reasonable accommodation ("Count II"), and that he was retaliated against for engaging in a protected activity ("Count III"). Now pending before the Court is the Defendant's Motion to Dismiss, ECF No. 9, and Plaintiff's Motion for Leave to File a Surreply, ECF No. 18. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is denied, and Plaintiff's Motion for Leave to File a Surreply is denied.

## I.      BACKGROUND[1]

Plaintiff began working for Defendant on December 30, 2001. ECF No. 1 ¶ 18.[2] He was initially assigned to work at the United States Naval Test Pilot School hangar, located at Naval Air Station Patuxent River, as an aircraft mechanic, *id.*, ¶ 20, but after serving in the Air Force from 2006 to 2009, he was reassigned to avionics, and thereafter "adjusted, repaired and replaced the electrical systems on various aircraft," *id.*, ¶¶ 21–22. In 2011, his work became focused on avionics for the TH-57C Sea Ranger ("TH-57C") helicopter, primarily the radio communications, navigation, and GPS systems. *Id.*, ¶¶ 23–24. Plaintiff alleges he was well-regarded in his job, that throughout his nearly fifteen-year tenure with Defendant, he never received a negative performance review, and that he planned to work for Defendant until he retired. *Id.*, ¶¶ 27–31.

On July 7, 2015, after experiencing severe head and neck pain, Plaintiff was rushed to the emergency room. *Id.*, ¶ 32. His physician determined Plaintiff would need to take time off from work. *Id.*, ¶ 33. Plaintiff informed Defendant, who said he was approved for twenty-six weeks of leave. *Id.* However, Amy DuLaney, Human Resources/Benefits Administrator for Defendant, sent Plaintiff a letter dated July 16, 2015 informing him that he would be required to "provide a full duty release certification" upon his return. *Id.*, ¶ 34. On July 30, 2015, Plaintiff was formally diagnosed with cervical spine disease and osteophyte complex from the C3-C4 and C6-C7 vertebrae. *Id.*, ¶ 35. On August 6, 2015, Plaintiff provided Defendant with a completed document entitled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" detailing his medical restrictions, including climbing, crawling,

---

[1] For purposes of considering Defendants' Motion to Dismiss, the Court accepts the facts alleged in the Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

bending, kneeling, lifting more than five pounds, reaching overhead, flexing or extending the neck, sitting or standing more than thirty minutes. *Id.*, ¶¶ 38–39.

During his twenty-six-week medical leave, Plaintiff underwent various medical procedures and assessments, including CT scans, to diagnose his condition properly and determine the best method of treatment. *Id.*, ¶ 42. Ultimately, Plaintiff's medical providers concluded that Plaintiff's condition could be treated with regular epidural injections in his neck, approximately twice a year. *Id.*

On December 2, 2015, Ms. DuLaney informed Plaintiff by email that his leave was set to exhaust on January 11, 2016. *Id.*, ¶ 44. Plaintiff completed a medical evaluation on January 6, 2016, *id.*, ¶ 45, and on January 8, 2016, he reported to Defendant's Human Resources Office to request a reasonable accommodation for his return to work, *id.*, ¶ 63. He provided Mr. Ethrage Haggard, the Human Resources Director, a medical note dated January 7, 2016 stating that he could return to work but could not lift anything greater than or equal to twenty pounds and could not perform "overhead work at this time." *Id.*, ¶ 46, 63. Plaintiff's medical providers had informed him that these restrictions were in place because he had recently received an epidural injection and that he would be able to work without restrictions in a month. *Id.*, ¶ 47. Mr. Haggard told Plaintiff that Terry Swift, the group manager, was the only person who could authorize the issuance of a reasonable accommodation, but she was unavailable, and he should return on January 11 to meet with her. *Id.*, ¶¶ 64–66. After meeting with Mr. Haggard, Plaintiff showed the medical note to Ray Taylor, production manager, and Dan Reyes, day shift supervisor, both of whom told him they did not see a problem with his work restrictions and reasonable accommodation request and looked forward to his return. *Id.*, ¶¶ 67–68. In his position, Plaintiff was "rarely" required to perform overhead work or lift tools and equipment

3

greater than or equal to twenty pounds. *Id*., ¶¶ 51–52. He could perform "nearly all his duties on the TH-57C by standing or sitting without raising his arms." *Id*., ¶ 57.

Plaintiff alleges that he returned on January 11 to meet with Mr. Swift and Ms. DuLaney, and he explained his request for a reasonable accommodation, including that it was temporary in nature and that he anticipated returning to work in a full duty status in one month. *Id*., ¶¶ 70–71. Mr. Swift and Ms. DuLaney stated that they would not provide Plaintiff any accommodations and that, because Plaintiff did not provide a full duty release as requested on July 16, 2015, Defendant was terminating his employment. *Id*., ¶ 72. Defendant's "Exit Interview Form," signed on January 21, 2016 and effective January 8, 2016, lists the reason for Plaintiff's termination as "[e]xhausting 26 weeks of LOA" *Id*., ¶ 76.

On or around February 2, 2016, Plaintiff's physician provided him with a medical note indicating that he could work four hours a day for two weeks "then if no exacerbations of pain with daily duties, he can then resume full time status." *Id*., ¶ 83. Plaintiff provided the note to Defendant, but Defendant would not reverse Plaintiff's termination. *Id*., ¶ 84. On February 16, 2016, Plaintiff's physicians cleared him to return to the workplace in a full-duty status. *Id*., ¶ 85.

On September 15, 2016, Mr. Meyer filed a complaint of discrimination with the U.S. Department of Labor Office of Federal Contract Compliance Programs ("OFCCP"). *Id*., ¶ 12. OFCCP issued a Notice of Results of Investigation on December 26, 2018, finding "DynCorp discriminated against [Mr. Meyer] when it failed to engage in the interactive process in response to [Mr. Meyer]'s request for accommodation and subsequently terminated [Mr. Meyer]." *Id*., ¶ 14. After Plaintiff and Defendant were unable to resolve Plaintiff's OFCCP Complaint through conciliation, OFCCP issued Plaintiff a Notice of Right-to-Sue dated September 3, 2019. *Id*., ¶ 16. Plaintiff filed the instant lawsuit against Defendant on November 26, 2019, alleging

4

violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq. ("the ADA"), including: (1) termination of employment on the basis of disability and perceived disability; (2) denial of reasonable accommodation; and (3) retaliation. *Id*., ¶¶ 86–125. Defendant moved to dismiss the Complaint on February 7, 2020, arguing Plaintiff had not alleged sufficient facts to show he was a "qualified individual" or to show that Defendant's legitimate, nondiscriminatory basis for its actions was pretextual. ECF No. 9. Plaintiff filed a motion for leave to file a surreply, ECF No. 18, which Defendant has opposed, ECF No. 19.

## II.     MOTION FOR LEAVE TO FILE SURREPLY

Although not chronological, the first issue to be considered is Plaintiff's Motion for Leave to File Surreply. "As a general rule, this Court will not allow parties to file sur-replies." *See Nicholson v. Volkswagen Grp. of Am., Inc.*, No. CIV.A. RDB-13-3711, 2015 WL 1565442, at *3 (D. Md. Apr. 7, 2015) (citing Local Rule 105.2(a) (D. Md.)); *see also Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015) ("Surreplies are highly disfavored in this District."). In *MTB Services*, the court stated that a "party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. 1:12-cv-02109-RDB, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (internal citation omitted). The court may permit a plaintiff to file a surreply if "a defendant raises new legal issues or new theories in its reply brief," *id*. (citing *TECH USA. Inc. v. Evans*, 592 F.Supp.2d 852, 862 (D. Md. 2009)), and "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply," *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D. Md. 2003). However, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. RWT–12–3109, 2013 WL 3353752, at *3 (D. Md. July 2, 2013) (citation omitted).

Defendant's Reply did not assert new facts or allegations. *See* ECF No. 17. Plaintiff argues leave to file a surreply is nevertheless warranted because Defendant's Reply asserted two new legal arguments: "(1) the ADA does not require an employer, under any circumstances, to provide more than twenty-six (26) weeks of leave under the ADA and; (2) every task arguably related to the repairing [of] a helicopter is essential, without regard to the frequency or nature of the task." ECF No. 18 at 2. However, neither of these arguments is truly new or raised for the first time in the Reply. Instead, they represent extensions of prior arguments regarding (1) whether an additional month of medical leave constitutes a reasonable accommodation and (2) whether overhead work and heavy lifting are essential or marginal functions of an avionics mechanic position. Parties may not use surreplies to have the last word on legal questions disputed across the earlier briefs. Nor may they use any novel spin on a prior argument to justify continued rounds of briefing. *See Dones v. Brennan*, 147 F. Supp. 3d 364, 373 (D. Md. 2015) (denying motion for leave to file a surreply where "it appears that 'Plaintiff[ ] seek[s] merely to re-open briefing on the issues raised'") (quoting *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 467 (D. Md. 2008)). Here, because Defendant's Reply did not raise new issues that could not have been anticipated beforehand, and instead merely provided additional legal authority and development of its prior arguments, Plaintiff's Motion for Leave to File a Surreply is denied.

## III.    MOTION TO DISMISS

### A.  Standard of Review

Defendants have moved to dismiss Plaintiff's Complaint on the ground that the Complaint fails to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint,"

6

and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and conclusion . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action[.]") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

In the Fourth Circuit, "although a plaintiff 'need not plead facts sufficient to establish a prima facie case of . . . discrimination to survive a motion to dismiss,' the 'pleading standard established in *Iqbal* and *Twombly* applies[.]'" *Aletum v. Kuehne + Nagel Co.*, No. CV ELH-19-

7

1972, 2020 WL 1955553, at \*10 (D. Md. Apr. 23, 2020) (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)). "Thus, the question at the motion to dismiss stage is whether the plaintiff has stated 'a plausible claim for relief . . . .'" *Aletum v. Kuehne + Nagel Co.*, 2020 WL 1955553, at \*10 (quoting *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at \*4 (D. Md. Jan. 12, 2016)).

### B. Discussion

#### 1. Qualified Person with Disability

The Americans with Disabilities Act of 1990 ("ADA") prohibits discrimination by employers against qualified individuals with a disability. 42 U.S.C. § 12112. The ADA bars not only "disparate treatment because of an employee's disability," but also "the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability,'" and "'denying employment opportunities to a job applicant or employee,' where the denial of the employment opportunity 'is based on the need . . . to make reasonable accommodation.'" *Shin v. Univ. of Md. Med. Syst. Corp.*, 369 F. App'x 472, 479 (4th Cir. 2010) (quoting 42 U.S.C. § 12112(a); *id.* § 12112(b)(5)(A); *id.* § 12112(b)(5)(B)). The ADA also prohibits retaliation against any individual who has opposed any act of discrimination under the statute, or who has "made a charge, testified, assisted, or participated in any manner" in a proceeding under the statute. 42 U.S.C. § 12203. Because all three claims require Plaintiff to allege facts sufficient to show he is a "qualified individual with a disability" under the ADA, the Court begins its analysis there.

#### a. Disability

A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C)

being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *see also Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)). Major life activities include, but are not limited to, "sleeping, walking, standing, lifting, bending . . . working" and "reproductive functions." 42 U.S.C. § 12102(2)(A)–(B). An individual with "a record of such an impairment," or who is "regarded as having such an impairment," will be considered to have a disability. *Id.* § 12102(1)(B)–(C).

The question of whether a plaintiff is disabled or has a record of disability under the ADA is "'a question of law for the court.'" *Coghill v. Bd. of Educ. of Prince George's Cty.*, GJH-14-2767, 2017 WL 1049470, at *5 (D. Md. 2017) (quoting *Rose v. Home Depot U.S.A., Inc.*, 186 F. Supp. 2d 595, 608 (D. Md. 2002)), *aff'd*, 703 F. App'x 211 (4th Cir. 2017). To resolve this question, the court must make an "an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001). "[T]he date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'" *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000).

Plaintiff alleges that he was diagnosed with cervical spine disease and osteophyte complex from the C3-C4 and C6-C7 vertebrae. ECF No. 1 ¶ 35. This diagnosis and the associated impacts on Plaintiff's ability to climb, crawl, bend, kneel, lift more than five pounds, reach overhead, flex or extend his neck, and sit or stand more than thirty minutes were documented in a form entitled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)." *Id.*, ¶¶ 38–39. He also provided this document to Defendant. *Id.* Although Plaintiff's symptoms had improved at the time of the alleged adverse employment decision contested here, he still required ongoing treatment to

manage his condition. *Id.*, ¶¶ 42–43. Plaintiff has thus alleged sufficient facts to show he has a disability.

### b.    Qualified Individual

Whether Plaintiff is a "qualified individual" is a closer question and is heavily contested by the parties. A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are those "that bear more than a marginal relationship to the job at issue." *Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993)); *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 579–80 (4th Cir. 2015). "Plaintiff bears the burden of demonstrating that []he could perform the essential functions of [his] job." *Tyndall*, 31 F.3d at 213; *see also Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012). A reasonable accommodation is one that "enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position." 29 C.F.R. § 1630.2(o)(1)(ii). Reasonable accommodations may comprise "job restructuring, part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), as well as "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment," 29 C.F.R. § app. 1630.2(o). Here, the parties dispute whether lifting items greater than twenty pounds and performing overhead work are essential functions of the job and whether reasonable accommodations would allow Plaintiff to perform the essential functions of the job.

### i.    Essential Functions

The ADA identifies two factors that inform whether a function is essential to a position. First, the court must consider the employer's judgment of the essential functions. *See* 42 U.S.C. §

12111(8). Second, if a written job description has been prepared ahead of advertising or interviewing candidates for a position, that description "shall be considered evidence of the essential functions of the job." *See id.*

The applicable regulations provide additional guidance on an essential-function inquiry. First, the regulations define the essential functions as "the fundamental job duties of the employment position the individual with a disability holds or desires," excluding "the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Second, the regulations identify seven factors that are "evidence of whether a particular function is essential":

    i.    the employer's judgment as to which functions are essential;
    ii.    written job descriptions prepared before advertising or interviewing applicants for the job;
    iii.    the amount of time spent on the job performing the function;
    iv.    the consequences of not requiring the incumbent to perform the function;
    v.    the terms of a collective bargaining agreement;
    vi.    the work experience of past incumbents in the job;
    vii.    the current work experience of incumbents in similar jobs.

*Id.* § 1630.2(n)(3)(i)–(vii). None of the seven factors is dispositive, and not all of them will be relevant in every case. *See, e.g.*, *Jacobs*, 780 F.3d at 579 (considering some but not all regulatory factors). Furthermore, the list of factors is not exhaustive. *See* 29 C.F.R. § 1630.2(n)(2)(3) (explaining that proof of essential functions includes, "but is not limited to," evidence identified by regulatory factors). Thus, for example, a written job description prepared after advertising or interviewing applicants for the job could be relevant evidence of whether a function is essential. *See Basith v. Cook Cty.*, 241 F.3d 919, 928 (7th Cir. 2001).

At the time of the alleged adverse employment decision, Plaintiff's physician had provided a medical note stating he could not lift anything greater than or equal to twenty pounds and could not perform "overhead work at this time." ECF No. 1 ¶ 46. The parties dispute

whether lifting items greater than or equal to twenty pounds and performing overhead work constitute "essential functions" of his position as an avionics mechanic.

Plaintiff has alleged, "[t]he systems Mr. Meyer worked on are all located at, or below, Mr. Meyer's chest level when he works on them and therefore, would not have required reaching overhead," and "the tools, equipment, or parts regularly used to perform maintenance, or repair work, on the TH-57C systems on which Mr. Meyer worked did not weigh over twenty pounds." ECF No. 1 ¶¶ 53–59; *see* 29 C.F.R. § 1630.2(n)(3)(vi) (taking into account past employees' work experiences). Plaintiff alleges he was "rarely" required to perform overhead work or lift tools and equipment greater than or equal to twenty pounds. *Id.*, ¶¶ 51–52; *see* 29 C.F.R. § 1630.2(n)(3)(iii) (considering the amount of time spent performing the function). Additionally, Plaintiff alleges that during the night shift, there are approximately twenty avionics mechanics and many other employees performing work on other parts of the helicopters located in the same hangar where Plaintiff worked, including at least one other employee assigned to perform work on the TH-57C, and that employees frequently assisted each other in the performance of their duties. ECF No. 1 ¶¶ 60–62; *cf.* 29 C.F.R. § 1630.2(n)(2)(ii) (finding a function may be essential where "the small size of the workforce requires all employees to be able to perform the function"). Finally, Plaintiff alleges that he showed the medical note to a production manager and day shift supervisor, both of whom told him they did not see a problem with his work restrictions and looked forward to his return. ECF No. 1 ¶¶ 67–68; *see* 29 C.F.R. § 1630.2(n)(3)(i) (considering the employer's judgment). Taking into account the factors outlined in 29 C.F.R. § 1630.2(n)(3) and 29 C.F.R. § 1630.2(n)(2)(i)–(iii),[3] and taking all factual

---

[3] The regulations also provide three examples of situations where a function can be essential:
  i.     the job exists specifically to perform the function;
  ii.    the small size of the workforce requires all employees to be able to perform the function;
  iii.   the employee is hired for her expertise in performing the highly specialized function.

inferences in the light most positive to Plaintiff, the Courts finds the Plaintiff has sufficiently alleged overhead work and lifting tools and equipment greater than or equal to twenty pounds are not "essential functions" of the avionics mechanic position.

Defendant's arguments to the contrary are unpersuasive. According to Defendant, lifting items greater than or equal to twenty pounds and performing overhead work "are essential functions of his position insofar as the reason that the avionics technician position exists is to perform the essential duties necessary to repair electrical systems on a helicopter." ECF No. 9-1 at 6. Defendant continues, "[i]f, as the Complaint concedes, at least some of the duties associated with repairing a helicopter required that Meyer be able to raise his arms or lift more than twenty pounds, he could not perform the essential functions of his position (because he could not repair a helicopter) and he is not a qualified individual under the ADA." *Id.* Defendant argues, in essence, that any task normally performed by an avionics mechanic is definitionally "essential." However, the fact that an employee may normally perform a task is insufficient to establish that it is essential. The question remains whether overhead work or heavy lifting are essential to repairing helicopters, and Plaintiff has sufficiently alleged they are not.

Defendant further attempts to argue that, even if Plaintiff is rarely required to do either of the restricted tasks, the frequency with which essential functions are performed does not speak to whether they should be considered essential. *Id.* at 6–7. As support, Defendant points to a case involving firefighters, finding "the lifting and carrying of victims is an essential function of the position of firefighter because it is a task that must be performed whenever required, however infrequent that may be." *Serrano v. Cty. of Arlington*, 986 F. Supp. 992, 1000 (E.D. Va. 1997). However, it is readily apparent that the need for a firefighter to be able to carry a human from a

---

*See* 29 C.F.R. § 1630.2(n)(2)(i)-(iii).

fire if the situation presents itself is distinguishable from Plaintiff's need to lift a heavy object while fixing a helicopter. That a task was, in a very different factual circumstance, considered essential even if performed rarely does not change the Court's analysis here. *See* 29 C.F.R. § 1630.2(n)(3)(iii).

ii.      **Reasonable Accommodations**

Even assuming Plaintiff could not perform essential job functions without accommodations, Plaintiff has alleged there were reasonable accommodations that would have allowed him to perform those functions. Plaintiff alleges that he informed Defendant that after one month, he would be able to work without restrictions. ECF No. 1 ¶ 71. Plaintiff further alleges that he could have been transferred to another position. *Id*., ¶ 91. Third, Plaintiff alleges that a colleague could have performed any necessary overhead work and heavy lifting. *Id*., ¶¶ 62, 91. Defendant's claims that these are not reasonable accommodations are not persuasive.

First, Defendant argues that "the medical documentation that Meyer did submit provides no indication that his medical restrictions would ever be lifted," and Defendant is not required to provide Plaintiff with indefinite leave. ECF No. 9-1 at 9. However, Plaintiff alleges that he informed Defendant that he would be able to work without restrictions in a month.[4] ECF No. 1 ¶ 71. In *Wilson*, the Fourth Circuit concluded that "a leave request will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question." *Wilson v. Dollar Gen. Corp*.,

---

[4] Defendant's argument that it need only have relied on the text of Plaintiff's medical note, and not on Plaintiff's own statement that his physician had said Plaintiff would be able to work without restrictions in a month, fails. *See* ECF No. 9-1 at 11. Even if the court considers the note itself, *see Sec'y of State for Defence v. Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007), taking the facts in the light most favorable to Plaintiff, Plaintiff also told Defendant the restrictions would be temporary.

717 F.3d 337, 345 (4th Cir. 2013) (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d

454, 465–66 (4th Cir. 2012); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)); *see also Moore v.*

*Md. Dep't of Pub. Safety & Corr. Servs. Patuxent Inst.*, CCB-11-0553, 2013 WL 549864, at *4

(D. Md. Feb. 13, 2013) ("Additional medical leave is a reasonable accommodation only where it

is 'finite and will be reasonably likely to enable the employee to return to work.'")

(quoting *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D.W. Va.

2008)); *see also Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000)

("Some employees, by the nature of their disability, are unable to provide an absolutely assured

time for their return to employment, but that does not necessarily make a request for leave to a

particular date indefinite. Each case must be scrutinized on its own facts. An unvarying

requirement for definiteness again departs from the need for individual factual evaluation."").

Here, where the Plaintiff informed Defendant that he would be able to work without restrictions

in a month, a finite period of leave could be found to be a reasonable accommodation.

Second, regarding Plaintiff's suggested transfer to another position, Defendant argues

Plaintiff fails to allege facts showing he "had the requisite knowledge, skills, or experience to

perform the duties of a tools and parts attendant." ECF No. 9-1 at 8–9. Plaintiff alleged that, at

the time of his termination, he could have performed the essential functions of vacant positions

with or without reasonable accommodations. ECF No. 1 ¶¶ 80–81. Plaintiff further alleges that

the tools and parts attendant position "had no requirement to reach overhead or lift more than

twenty pounds." *Id.*, ¶ 82. Further factual allegations are unnecessary at this stage. *See Townes v.*

*Maryland Dep't of Juvenile Servs.*, No. JKB-15-1093, 2015 WL 5928114, at *6 (D. Md. Oct. 8,

2015) (denying a motion to dismiss where Plaintiff alleges that there were other positions

available which were "compatible with her requested accommodations"). After discovery,

however, Plaintiff will "bear[] the burden of [] showing that such a job was available at the relevant time and that he could have performed the essential functions of that job." *Wehner v. Best Buy Stores*, L.P., No. CV MJG-15-2163, 2017 WL 952685, at *12 (D. Md. Mar. 10, 2017); *see also id*. at *11 ("Courts have recognized that the employer is in a far better position than the employee to identify vacant positions that the employee may qualify for because of the employer's advanced capacity and resources."). For now, the allegation is sufficient.

Finally, Defendant argues that shifting burdens to another employee is not a reasonable accommodation. However, (1) exchanging responsibilities for marginal functions between employees or (2) shifting duties that may be performed "easily" have been found to be reasonable accommodations. *See Benson v. Nw. Airlines, Inc*., 62 F.3d 1108, 1112 (8th Cir. 1995) ("Job restructuring is a possible accommodation under the ADA. Restructuring frequently involves reallocating the marginal functions of a job.") (internal citations omitted); *Rorrer v. City of Stow*, 743 F.3d 1025, 1044 (6th Cir. 2014) ("Shifting marginal duties to other employees who can easily perform them is a reasonable accommodation."); *see also EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, No. 915.002 (Oct. 17, 2002) ("An employer may switch the marginal functions of two (or more) employees in order to restructure a job as a reasonable accommodation."); *see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140–41 (2d Cir. 1995) (noting that in the hypothetical case of a visually impaired clerk, where the essential functions of a job are "the ability to take in, process, and act on information," "[t]he provision of a reader in these circumstances does not eliminate an essential function, but rather permits the individual with a disability to perform that essential function"). Therefore, if overhead work and heavy lifting are found to be marginal functions, and other employees could have easily performed them on

16

Plaintiff's behalf, such an arrangement would be reasonable. *Cf. Rehrs v. Iams Co.*, 486 F.3d 353, 357 (8th Cir. 2007) ("[A]n accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated."); *accord Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995). Plaintiff alleged that "[e]mployees frequently assisted each other in the performance of their duties" and "a colleague could have easily assisted him" with any necessary overhead work or heavy lifting. ECF No. 1 ¶¶ 60–62. These allegations are sufficient at this stage.

Therefore, Plaintiff has alleged sufficient facts to show that, with reasonable accommodations, he could have performed the essential functions of the position, meaning he was a qualified individual with a disability at the time of the alleged adverse employment decisions. The Court next addresses the individual counts in the Complaint.

### 2. Count I: Termination of Employment

In Count I, Plaintiff alleges he was unlawfully terminated because of his disability. ECF No. 1 ¶¶ 86–98. A plaintiff may prove that an adverse employment action amounts to intentional employment discrimination through (1) direct or circumstantial evidence of discrimination that is sufficiently probative to meet his burden of proof, *see Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996); or through (2) the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the latter approach, the plaintiff must first establish a "prima facie case of discrimination." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). To make a prima facie case for a wrongful discharge, the plaintiff must show that: (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that

raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). Beyond challenging that Plaintiff is a qualified individual with a disability, and thus part of the ADA's protected class, Defendant does not appear to seriously dispute that Plaintiff has alleged a prima facie case. Thus, the Court addresses the prima facie case only briefly.

As discussed above, Plaintiff pleaded facts sufficient to show he is a qualified individual with a disability, *see* Section III.B.1, and thus within the ADA's protected class, *see Haulbrook*, 252 F.3d at 702 ("One is within the ADA's protected class if one is 'a qualified individual with a disability.'") (citing 42 U.S.C.A. § 12112). Thus, the first element is satisfied. Additionally, Plaintiff alleged that his employment was terminated, satisfying the second element. ECF No. 1 ¶ 72. Plaintiff further alleges that Defendant was meeting his employer's legitimate expectations and was considered an exemplary employee, satisfying the third element.[5] *Id.*, ¶¶ 27–29. The court also finds the fourth element satisfied, as Plaintiff was terminated immediately after requesting a reasonable accommodation. *See Haulbrook*, 252 F.3d at 706 ("Giving Haulbrook the benefit of all reasonable inferences, a contested issue of fact arguably exists as to the causal connection between his accommodation request and termination, due solely to the proximity in time of his termination on November 25 and his assertion on November 4 of a right to accommodation under the ADA.").

Under the *McDonnell Douglas* approach, once a plaintiff establishes a prima facie case, "a presumption of illegal discrimination arises, and the burden of production shifts to the

---

[5] The fact that Plaintiff had been on medical leave and was not working at the specific moment when his employment was terminated is not disqualifying, as courts have looked to absences beyond the allowed leave period in determining a plaintiff was not meeting expectations. *See Smith v. Charter Communications, Inc.*, No. 3:18-CV-80-MOC-DSC, 2020 WL 3606391, at *7 (W.D.N.C. July 2, 2020) ("Because Plaintiff repeatedly refused to attend work for three full months after his approved leave, Plaintiff cannot prove he was performing his job at all, much less to the level of Charter's legitimate expectations.").

employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production," the plaintiff must then prove, by a preponderance of the evidence, "that the proffered reason was not the true reason" and that the plaintiff "has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981).

As a preliminary matter, Plaintiff argues the *McDonnell Douglas* framework does not apply to wrongful termination claims based on the need to make reasonable accommodations. It is true that failure-to-accommodate claims are generally not analyzed under the *McDonnell Douglas* framework. *See Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *9 (11th Cir. 2007) ("A majority of our sister circuits have been persuaded by this distinction, and we join with them today and hold that *McDonnell Douglas* burden-shifting is not applicable to reasonable accommodation cases."). Defendant, presumably for that reason, did not suggest its pretext-based arguments should apply to Count II, Plaintiff's failure-to-accommodate claim. ECF No. 9-1 at 2. Plaintiff's attempt to extend this rule to its termination claim, however, misses the fundamental distinction between cases analyzed under the *McDonnell Douglas* framework and those not: the need to show discriminatory intent, either through direct evidence or the burden-shifting construct allowed by *McDonnell Douglas*.

In failure-to-accommodate cases, intent is irrelevant. As the court in *Potter* explains,

> [I]t is not the employer's discriminatory intent in taking adverse employment action against a disabled individual that matters. Rather, discrimination occurs when the employer fails to abide by a legally imposed duty. The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability.

*Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004). Therefore, the *McDonnell Douglas*

framework is unnecessary:

> Reasonable accommodation claims are not evaluated under the *McDonnell Douglas* burden-shifting analysis. . . . This is so because a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive. The *McDonnell Douglas* line of cases, however, is aimed at fleshing out this elusive factual question of intentional discrimination.

*Id.* at 766 (internal quotation marks omitted); *see also Lenker v. Methodist Hosp.*, 210 F.3d 792,

799 (7th Cir. 2002) ("[W]hen a plaintiff brings a claim under the reasonable accommodation part

of the ADA, the burden shifting method of proof is both unnecessary and inappropriate.");

*Higgins v. New Balance Athletic Shoes, Inc*., 194 F.3d 252, 264 (1st Cir. 1999) (arguing that

reasonable accommodation does not require an employer's action be motivated by

discriminatory animus directed at disability, and thus "[i]t follows inexorably that the *McDonnell*

*Douglas* scheme is inapposite in respect to such claims").

However, in a claim where discriminatory intent matters, such as one of disparate

treatment, the *McDonnell Douglas* test still applies. *See Nadler*, 2007 WL 2404705, at *1. The

Fourth Circuit recognized this precise distinction in *William v. Channel Master Satellite Sys.,*

*Inc.*, writing, "[t]he *McDonnell Douglas* test is designed to circumvent a factual dispute over the

reasons for discharge, and is therefore most appropriate when the defendant disavows any

reliance on discriminatory reasons for its adverse employment action." 101 F.3d 346, 348 n. 1

(4th Cir. 1996) *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470

(4th Cir. 1999). In a claim brought under 42 U.S.C. § 12112(b)(5)(B), the Plaintiff must establish

that he or she was terminated "based on the need of such covered entity to make reasonable

accommodation to the physical or mental impairments of the employee or applicant." Defendant

disputes that its basis for terminating Plaintiff's employment was discriminatory. Therefore, the

question of intent is central, and the *McDonnell Douglas* framework applies if a plaintiff is

unable to make its case through direct evidence of intentional discrimination.

Understanding the *McDonnell Douglas* framework applies to Counts I and III, the Court

proceeds to discuss whether, as Defendant argues, those claims must be dismissed because

Plaintiff has failed to allege facts showing its legitimate, non-discriminatory basis for terminating

Plaintiff was merely a pretext, ECF No. 9-1 at 10–12, or, if as Plaintiff counters, a showing of

pretext need not be made at this stage. ECF No. 14 at 15–16. The Fourth Circuit has stated:

> Whether the [defendant]'s nondiscriminatory explanation for rejecting the third-lien
> position is in fact pretext is a question to be analyzed under the long-familiar shifting
> burdens regime of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36
> L.Ed.2d 668 (1973), and not under Rule 12(b)(6). Still, under *Iqbal* and *Twombly*, the
> Court must consider the plausibility of inferring discrimination based on [the plaintiff]'s
> allegations in light of an "obvious alternative explanation" for the conduct. *Iqbal*, 556
> U.S. at 682, 129 S.Ct. 1937. In other words, while [the plaintiff] need not establish a
> prima facie case at this stage . . . we must be satisfied that the [defendant]'s explanation
> for rejecting the loan does not render [the plaintiff]'s allegations implausible.

*Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017);[6] *see also Craft v. Fairfax*

*County Government*, No. 1:16CV86(JCC/MSN), 2016 WL 1643433, at *4 (E.D. Va. Apr. 26,

2016) ("Plaintiff need not plead facts sufficient to constitute a prima facie case under the burden-

shifting framework of *McDonnell Douglas Corp. v. Green*, but courts may look to the

requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for

relief.") (internal citations omitted); *Hart v. Lew*, 973 F. Supp. 2d 561, 580 (D. Md. 2013)

("These two methods of proof [direct evidence and the *McDonnell Douglas* framework] establish

---

[6] Although *Woods* involves a claim brought pursuant to 42 U.S.C. § 1981, its analysis of the McDonnell Douglas
framework is nevertheless instructive. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 57 (4th Cir.
1995), as amended (June 9, 1995), as amended (Mar. 14, 2008) ("Courts have applied the McDonnell Douglas
scheme of proof to claims brought under several different statutes."); *see also Aletum v. Kuehne + Nagel Co.*, No.
CV ELH-19-1972, 2020 WL 1955553, at *8 (D. Md. Apr. 23, 2020) ("Although *McDonnell-Douglas* involved a
claim of racial discrimination under Title VII, its burden-shifting methodology has been adapted for use in ADA
discrimination cases."). Indeed, in *Aletum v. Kuehne + Nagel Co.*, an employment discrimination action brought
under the ADA, this court looked to the pleading standard outlined in *Woods. See* 2020 WL 1955553, at *10.

the standards to prove intentional employment discrimination at trial. But, at the motion to dismiss stage, they only serve to inform a court's evaluation of the allegations.") (internal citations omitted).

This Court therefore must determine whether Defendant's explanation for terminating Plaintiff's employment renders his allegations implausible. Defendant argues that Plaintiff was terminated because he did not provide a medical release to return to work in a full-duty capacity without any medical restrictions, and that since he was not able to work in a full-duty capacity as of July 11, 2016, he had exhausted his medical leave. ECF No. 9-1 at 12. This explanation aligns with that provided in Defendant's "Exit Interview Form," which listed the reason for Plaintiff's termination as "[e]xhausting 26 weeks of LOA." *Id.*, ¶ 76.

Plaintiff argues this basis cannot be considered legitimate because it amounts to a "100% healed" or "fully healed" policy and is therefore a per se violation of the ADA. ECF No. 14 at 16–18, 21–22. Defendant disputes that it has a 100% healed policy or that the Complaint alleges it does, although it does not state how its own policy that Plaintiff "provide a full duty release certification" upon his return to work differs from the "100% healed" or "fully healed" policies discussed in cases such as *McGregor v. AMTRAK*, 187 F.3d 1113, 1116 (9th Cir. 1999). ECF No. 17 at 16 n.6. "The Fourth Circuit has not addressed whether a 100% healed policy is a per se violation of the ADA." *Mullins v. Mayor*, No. TJS-14-2698, 2016 WL 4240069, at *9 (D. Md. Aug. 11, 2016). This court declines to address it now, as the answer does not impact the outcome of the pending motion.

Plaintiff alleges that he returned to work on January 8, 2016, to request a reasonable accommodation, three days before his leave exhaustion date. ECF No. 1 ¶ 63. Plaintiff further alleges that he was able to perform the essential functions of his job with accommodations, and

that a production manager and day shift supervisor told him on that day that they did not see a problem with his work restrictions and looked forward to his return. *Id.*, ¶¶ 67–68. Then, on January 11, he was told his employment was terminated. *Id.*, ¶¶ 69–72. But the effective date on the Exit Interview Form, which stated the reason for termination as "[e]xhausting 26 weeks of LOA," was January 8, 2016, the day he made his initial accommodations request and before his leave had actually exhausted. *Id.*, ¶¶ 77–78. Given Plaintiff's allegations, Defendant's claim that it terminated Plaintiff due to exhaustion of his medical leave and his failure to provide the requested medical release does not defeat the plausibility of Plaintiff's claims.

### 3.   Count II: Denial of Reasonable Accommodation

In Count II, Plaintiff alleges Defendant denied his request for a reasonable accommodation in violation of the ADA. ECF No. 1 ¶¶ 99–113. In a failure-to-accommodate case under the ADA, at the motion to dismiss stage, a plaintiff must plead facts demonstrating "'(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations.'" *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

As discussed above, Section III.B.1.a, Plaintiff has pleaded facts showing he had a disability within the meaning of the ADA, satisfying the first element.

Regarding, the second element, notice, the Fourth Circuit concluded in *Jacobs* that an employee's conversation with her supervisors about her disability constituted "affirmative evidence from which a reasonable jury could conclude" that the employer had knowledge of the employee's disability. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir.

2015). "'The employer need only know the underlying facts, not the legal significance of those facts.'" *Id.* (quoting *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994)); *see also James v. Oregon Sandblasting & Coating, Inc.*, No. 3:15-CV-01706-HZ, 2016 WL 7107227, at *6 (D. Or. 2016) (concluding that where the employee had told "his supervisors and coworkers" about his disability "in an effort to obtain help," the "Plaintiff can establish an issue of fact as to whether he has a 'record of a disability'"). Here, Plaintiff alleged that he provided Defendant a document entitled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" stating he suffered from "disc disease." ECF No. 1 ¶¶ 38–40. The note additionally stated that, at that time, the condition had impacted Plaintiff's ability to climb, crawl, bend, kneel, lift more than five pounds, reach overhead, flex or extend his neck, and sit or stand more than thirty minutes. *Id.*, ¶ 39. Plaintiff has therefore alleged sufficient facts to find the second element satisfied.

The third element of the failure-to-accommodate analysis consists of two prongs: whether the specific accommodation requested was reasonable and whether, if the requested accommodation was provided, the plaintiff could perform the essential functions of the position. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 580 (4th Cir. 2015). Plaintiff has pleaded facts showing he could perform the essential functions of the position with certain accommodations and that those accommodations were reasonable. *See supra* Section III.B.1.b. However, Defendant disputes that Plaintiff actually requested the reasonable accommodations discussed above and argues that, having failed to request a specific, reasonable accommodation, Plaintiff's case cannot go forward. ECF No. 9-1 at 7–8.

The process of identifying a reasonable accommodation is an interactive one between an employer and employee, and the duty to engage in that process "is triggered when an employee

24

communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation." *Jacobs*, 780 F.3d at 581 (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)); *see also Parkinson v. Anne Arundel Med. Ctr.*, 79 F. App'x 602, 604–05 (4th Cir. 2003) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)) ("Of course, a request for accommodation need not, in all cases, be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation.'").

Plaintiff need not allege that he requested each specific, reasonable accommodation that should have been considered. *See Fleetwood v. Harford Sys.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999)) ("Nevertheless, an employer cannot escape liability simply because the employee does not suggest a particular reasonable accommodation that would assist him."); *see also Allen v. Discovery Commc'ns, LLC*, No. PWG-15-1817, 2016 WL 5404558, at *8 (D. Md. 2016) (finding, where a doctor's letter provided to the defendant recommended that "reasonable accommodations be instituted for a medically safe return to work," "[t]his non-specific request is enough"). However, Plaintiff ultimately must be able to show that a reasonable accommodation exists in order to prevail—he cannot merely assert that Defendant's failure to investigate whether a reasonable accommodation would allow Plaintiff to continue working constitutes an ADA violation in and of itself. *See id.* (quoting *Jacobs*, 780 F.3d at 581) ("Although [Defendant] 'will not be liable for failure to engage in the interactive process if [Allen] ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position,' [Plaintiff] sufficiently alleged that she requested 'reasonable accommodations,' and [Defendant] did not provide any accommodation, and that is all that is required at this stage

under the ADA or the MFEPA."); *see also Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002).

Plaintiff alleges that he requested that he be temporarily exempted from performing overhead work and heavy lifting. ECF No. 1 ¶ 71 ("Mr. Meyer explained his request for a reasonable accommodation to Mr. Swift and Ms. DuLaney, including that it was temporary in nature and that he anticipated returning to work in a full duty status in one month."). This, in combination with the medical note provided at the same meeting, is sufficient to trigger Defendant's good-faith duty under the ADA, as Plaintiff informed Defendant of his disability and expressed a desire for an accommodation.

Finally, Plaintiff alleges that Defendant refused to provide any accommodations that would allow him to continue working for Defendant. ECF No. 1 ¶ 72. To prevail on a claim for failure to accommodate, a plaintiff need not show that the employer relied on the record itself or acted with a discriminatory motive. The "denial of a 'reasonable accommodation' alone is discrimination." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 742 (D. Md. 1996); *see also* 42 U.S.C. § 12112(b)(5)(A) (listing "not making reasonable accommodations" as discrimination under the ADA). The fourth element is therefore satisfied.

### 4.  Count III: Retaliation

Plaintiff also brings a retaliation claim under the ADA. ECF No. 1 ¶¶ 114–25. To state a claim for retaliation, "a plaintiff must show that: (1) []he engaged in a protected activity; (2) [his] employer acted adversely against [him]; and (3) [his] protected activity was causally connected to [his] employer's adverse action." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). A request for an accommodation is a protected activity under the ADA. *See Haulbrook*, 252 F.3d at 706. As discussed above, Plaintiff pleaded facts sufficient to show he made a request for a

reasonable accommodation, satisfying the first element. *See* Section III.B.3. Additionally,

Plaintiff alleged that his employment was terminated, satisfying the second element. ECF No. 1 ¶

72.

With respect to the third element of the prima facie case, Plaintiff must prove that "but-

for" the protected activity, no adverse action would have been taken against her. *See Brady v. Bd.*

*of Educ. of Prince George's Cry.*, No. GJH-15-2196, 2016 WL 7655423. at *9 (D. Md. 2016)

(citing *Staley v. Gruenberg*, 575 Fed. App'x. 153, 156 (4th Cir. 2014)). "There is no precise

formula as to when an employer's actions will trigger application of that inference." *Coursey v.*

*Univ. of Maryland E. Shore*, 577 F. App'x 167, 175 (4th Cir. 2014). However, the Fourth Circuit

has recognized that the discharge of an employee soon after he engages in a protected activity is

"strongly suggestive of retaliatory motive," *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994), and

"gives rise to a sufficient inference of causation to satisfy the prima facie requirement," *King v.*

*Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). As Plaintiff was informed he was being terminated

three days after first requesting a reasonable accommodation and during the conversation with

the HR representative regarding that request, the close timing likewise "gives rise to a sufficient

inference" in this case. ECF No. 1 ¶¶ 63–77.

When those elements are satisfied, the burden shifts to the employer "to rebut the

presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions."

*Rhoads v. F.D.I.C.*, 257 F.3d 33, 392 (4th Cir. 2001) (quoting *Beall v. Abbott Labs.*, 130 F.3d

614, 619 (4th Cir. 1997)). If the employer satisfies that burden, "the plaintiff 'must demonstrate

that the proffered reason is a pre-text for forbidden retaliation.'" *Rhoads*, 257 F.3d at,

392 (quoting *Haulbrook,* 252 F.3d at 706). As discussed above, *see* Section III.B.2, that the Form

stated his termination was effective January 8, the day Plaintiff first requested a reasonable

accommodation and three days before his leave had actually exhausted, together with the proximity between Plaintiff's request for an accommodation and his termination, is sufficient at this stage to find Plaintiff's allegations plausible despite Defendant's stated basis for his termination. Therefore, dismissal is inappropriate.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave, ECF No. 18, shall be denied, and Defendant's Motion to Dismiss, ECF No. 9, shall be denied. A separate Order follows.

Dated: <u>September 14, 2020</u>                                  /s/_____

                                                                                GEORGE J. HAZEL
                                                                                United States District Judge